NELSON TRABUE, INC., Appellant-
Plaintiff and Counter-Defendant,

v.

PROFESSIONAL MANAGEMENT–AU-
TOMOTIVE, INC., Appellee-Defend-
ant and Counter-Claimant.

Supreme Court of Tennessee.

Nov. 13, 1979.

Stanley M. Chernau, Denney, Lackey & Chernau, Nashville, for Nelson Trabue, Inc.

David S. Zinn, Ingraham, Young & Corbett, Nashville, for Professional Management-Automotive, Inc.

## OPINION

HARBISON, Justice.

Although other questions were involved in the trial court, in this Court the only issue is whether a corporate manager-employee is entitled to compensation for services for the full term of its contract even though it was discharged for cause by the employer. The Chancellor allowed recovery only through the date of discharge, but the Court of Appeals reversed and allowed recovery for the remainder of the contract term.

The employee, Professional Management-Automotive, Inc., was a corporation, all of the stock in which was owned by Mr. J. Kenneth Dockery. It apparently had no other personnel and was, in effect, a one-man corporation. Mr. Dockery had been engaged in an automotive transmission repair business prior to being employed by appellant, Nelson Trabue, Inc. Apparently

Mr. Dockery organized Professional Management-Automotive, Inc. after he had decided to accept employment with appellant. He testified that he formed the corporation for certain income tax advantages. The company apparently had no other clients, and it is clear from the record that the personal services of Mr. Dockery were sought by appellant and were essential to the contract of employment. While there is no reason to ignore the corporate form, nevertheless, insofar as pertinent here, it appears that the contract was essentially one for the employment of Mr. Dockery as general manager of several automotive transmission repair shops owned by appellant.

The contract between the parties was for a term of one year, effective October 15, 1974. It was renewable for annual periods, subject to written confirmation. That Mr. Dockery's personal services were indispensable is evidenced by the twelfth paragraph, which provided that if at any time during the term Mr. Dockery should die, be disabled or become disassociated from appellee, appellant would have the right to terminate the agreement. Further, the tenth paragraph provided that so long as appellee "conscientiously performs its duties hereunder its employment shall be irrevocable during the time hereof . . . ." Apparently, therefore, if appellee should have failed conscientiously to perform its duties, it was contemplated that appellant would have the right to terminate.

In exchange for services rendered, appellee was to receive the sum of two thousand five hundred dollars per month, together with other considerations no longer involved in the litigation. Appellant discharged appellee on June 23, 1975, after what both the trial court and Court of Appeals found to be a material breach of the contract by appellee. The Chancellor awarded appellee the amount due under the contract through the date of discharge. The Court of Appeals, however, allowed appellee the balance of its annual compensation at the rate of twenty-five hundred dollars per month through October 15, 1975. The dispute between the parties in this Court is confined to that award.

The decision of the Court of Appeals was predicated upon the language of the fourteenth paragraph of the contract of employment, the pertinent part of which is as follows:

"Either party may terminate this agreement by giving proper written notice to the other party hereto within thirty (30) days prior to the termination of this agreement. In the event TRABUE terminates the agreement, all compensation to the COMPANY for its services under this agreement, both monthly salary and percentages of profit of TRABUE, for the balance of the time remaining under this agreement, shall be due and payable to the COMPANY, unless otherwise agreed by the parties."

The Court of Appeals was of the opinion that since the employer elected to terminate, appellee was entitled to the entire balance for the remaining period of the contract, inasmuch as appellant failed to establish by proof any monetary damages to mitigate the award.

Both the Chancellor and the Court of Appeals found that Mr. Dockery performed many services commendably, particularly the organization of books and records. Nevertheless they found that he had often been rude and discourteous to customers. He failed to respond to numerous inquiries and complaints made by customers through the local Better Business Bureau. Both courts found that this was a serious breach of the contract. The Court of Appeals stated:

"Trabue was a service-oriented business and, in order to manage the business in an efficient and business-like manner, it was necessary to 'keep customers happy'. PMA was required under the terms of the contract to operate the repair shops in a 'proper, efficient and business-like manner'. Dockery's attitude with customers was a violation of the contract."

Although Dockery denied any breach on his part, there is material evi-

dence in the record to support the findings of both the Chancellor and the Court of Appeals that he did in fact engage in unseemly disputes with customers, failed to answer complaints, and conducted himself in a manner detrimental to a service type of business such as appellant's. Appellant was unable to prove any specific damages as a result of Dockery's actions, although there was testimony that gross monthly sales had declined by fifty percent between November 1974 and June 1975. Despite the failure or inability of appellant to establish damages by a specific monetary figure, it is not contended by either party that the breach of contract by appellee was immaterial or inconsequential. In our opinion it was sufficiently serious to justify the employer's terminating the management services of appellee.

The general rules with regard to contracts of employment are well settled. They are stated in the case of *Little v. Federal Container Corp.*, 61 Tenn.App. 26, 452 S.W.2d 875 (1969) as follows:

"Generally, a contract of employment for an indefinite term is a contract at will and may be terminated by either party. [citations omitted]. Whereas, a contract for a definite term may not be terminated before the end of the term, *except for cause* or by mutual agreement, unless the right to do so is reserved in the contract. 56 C.J.S. Master and Servant § 30, p. 411.

"An employer has the right to discharge an employee at any time for just cause. The fact the employer bears with the incompetency or irregularities of such employee for a time does not estop the employer from discharging the employee for such incompetency if it continues." 61 Tenn.App. at 31–32, 452 S.W.2d at 877–78.

In the earlier case of *Jackson v. The Texas Company*, 10 Tenn.App. 235, 244 (1929), it was held that even where an agency is for a definite term, the principal has a right to revoke it before the expiration of the term without incurring liability for damages because of the failure of the agent faithfully to perform his express or implied

undertakings. *See also Moyers v. Graham*, 83 Tenn. 57 (1885). In the latter case an attorney had been employed to represent a client in a claim before the United States Treasury. The attorney was later disbarred, and the client obtained other counsel. Thereafter the attorney was reinstated and sought compensation from his client who had been successful in the prosecution of his claim. No basis for a quantum meruit recovery was found, and the client was otherwise held to have had just cause to discharge the attorney.

As stated in 53 Am.Jur.2d, *Master and Servant* § 49 (1970):

"While an employer may discharge at will one employed for no definite term without incurring liability, the employer, in order to justify dismissal of one employed for a specific period, must be able to show a breach on the part of the employee of some express or implied provision of the contract of service. The implied provisions of such a contract are violated when the servant does something inconsistent with the relation of master and servant or incompatible with the due and faithful performance of his duties."

Similar principles obtain in the discharge of an agent, as distinguished from a servant. *See* 3 Am.Jur.2d, *Agency* § 48 (1962).

While we do not understand that appellee takes serious issue with these rather basic principles of employment contracts, it insists that they are not applicable here because of language found in section 7 of the contract to the effect that

"All provisions of this agreement are individual and severable, and any breach or any invalidation of any provision will not affect the remaining portions."

Appellee insists that this language shows that the parties intended that appellant's obligation to compensate appellee for a one-year term was "independent" of appellee's obligation to perform efficient and competent services. The Chancellor rejected this contention, and we are of the opinion that there is insufficient evidence in the record to justify a conclusion that appellant would have employed appellee for a one-

year period and agreed to compensate it therefore irrespective of the quality and competence of the services rendered by appellee. While Mr. Trabue, the principal in Nelson Trabue, Inc., did seek out Mr. Dockery and offer him employment, it was Dockery's supposed expertise in automotive transmission repairs and in the management of similar businesses which led Trabue to do so.

Appellee concedes that ordinarily contracts, particularly those calling for personal services, will be construed as containing dependent, rather than independent, covenants unless a contrary intention clearly appears. *See International Correspondence School, Inc. v. Crabtree*, 162 Tenn. 70, 75, 34 S.W.2d 447 (1931).

While the seventh paragraph of the present contract does contain the language above quoted, the preamble to the contract recites that the agreement is made "in consideration of the mutual covenants and promises of the parties hereto . . . ." We have already referred to the tenth paragraph, entitling appellant to terminate for failure of appellee to perform conscientiously. We are unable to agree with appellee that its right to compensation for services was independent of its obligation to perform and was not subject to the basic rule governing employment contracts that the employer may terminate for cause even though the employment is otherwise for a definite term.[1]

The judgment of the Court of Appeals is reversed and the judgment of the Chancellor is reinstated. All costs, including those on appeal, will be divided equally between the parties. The cause will be remanded to the trial court for enforcement of the judgment and collection of costs accrued there.

BROCK, C. J., and HENRY, COOPER and FONES, JJ., concur.

---

1. As indicated previously, there were other features of the contract and other issues tried before the Chancellor, both at an injunction hearing and at trial on the merits. Some of the covenants in the contract, such as transfer of corporate control in the event of the death of Trabue, under some circumstances might have been of an "independent" nature, but we do not so regard the provisions relative to Mr. Dockery's services.