Anna P. WHITTAKER and Wanda C.
Whittaker, Plaintiffs-Appellants,

v.

CARE–MORE, INC. and Standing Stone
Health Care Center,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

June 25, 1981.

Permission to Appeal Denied by Supreme
Court Sept. 14, 1981.

Charles R. Ray, Lenahan, Ray & Miller,
Nashville, for plaintiffs-appellants.

Frank P. Pinchak, Chattanooga, for de-
fendants-appellees; Humphreys, Hutcheson
& Moseley, Chattanooga, of counsel.

OPINION

CONNER, Judge.

The issues in this case are whether the
employee-at-will rule is still in effect in
Tennessee and, if so, whether the plaintiffs-
appellants[1] were employees-at-will.

The plaintiffs were discharged from their
jobs at the defendants' Monterey nursing
home. Next they applied to the Tennessee
Department of Employment Security for
unemployment benefits. These benefits
were granted.

The plaintiffs then filed this action alleg-
ing that they were discharged without
"good cause" in "breach of an implied con-
tract for an indefinite term." The com-
plaint also alleged a retaliatory discharge.
In granting the defendants' motion for
summary judgment, the chancellor said:

> . . . the Court finds and holds that the
> plaintiffs were employees at will and
> could be terminated with or without
> cause except for those causes declared to
> be unlawful by the statutory laws of the
> State of Tennessee or by the laws of the
> United States of America. The court
> does not find that the termination of the
> employment was prohibited by any of
> those laws. The plaintiffs rely upon the
> fact that the defendants' contention was
> not accepted by the State of Tennessee
> Department of Employment Security.
> However, the mere fact that unemploy-
> ment compensation is allowed for termi-
> nation of employment without good cause

1. Hereinafter the parties will be referred to as
in the trial court or by their names, as abbrevi-
ated.

does not otherwise prohibit a discharge without good cause. The plaintiffs also rely upon the language in the employee handbook, but when read in connection with the application for employment, it appears that employment may be terminated by either party at will upon two weeks notice to the other. The plaintiffs accepted two weeks severance pay in lieu of notice in this case.

The plaintiffs appealed.

The plaintiffs cite numerous case authorities in order to mount a frontal assault on the "employee-at-will" rule. The rule is that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. *See Combs v. Standard Oil Co.*, 166 Tenn. 88, 59 S.W.2d 525 (1933); *Little v. Federal Container Corp.*, 61 Tenn. App. 26, 452 S.W.2d 875 (1969); *Nelson Trabue v. Professional Management-Automotive, Inc.*, 589 S.W.2d 661 (Tenn.1979). *See also* 56 C. J. S. Master & Servant §§ 8 and 31 (1948).

As was long ago stated in *Payne v. Western & Atlantic R.R. Co.*, 81 Tenn. 507 (1884):

> All may dismiss their employees at will, be they many or few, for good cause, for no cause or even for cause morally wrong without being thereby guilty of a legal wrong.

*Id.* at 519. This principle is still viable in Tennessee, except where modified by statute.

We are aware that the doctrine is and has been attacked under both contract and tort theories. We understand that a "retaliatory discharge" exception to the general rule is now recognized in some jurisdictions, based upon concepts of violation of public policy and/or employer "bad faith." *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23, Ill.Dec. 559, 384 N.E.2d 353 (1978); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.W.2d 876, 1981. *See also* Blades, *Employment at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employment Power*, 67 Colum.L.Rev. 1404 (1967).

Regarding the public policy argument, in *Palmateer v. International Harvester Co.*, *supra*, the Illinois supreme court said:

> By recognizing the tort of retaliatory discharge, *Kelsay* acknowledged the common law principle that parties to a contract may not incorporate in it rights and obligations which are clearly injurious to the public.

However, the same court acknowledged that the "Achilles heel" of the principle was in the definition of public policy. Due to the vagueness of that concept most courts which have allowed a cause of action for retaliatory discharge have required that the public policy against such discharge be clear and well defined, compelling and in strong opposition to the discharge. *See Percival v. General Motors Corp.*, 400 F.Supp. 1322 (E. D. Mo. 1975), *aff'd*, 539 F.2d 1126 (8th Cir. 1976).

The theory of bad faith is that in any contract of employment there is an implied covenant of good faith and fair dealing and that termination not made in good faith constitutes a breach of contract. *See Fortune v. National Cash Register Co., supra.* Few courts have accepted this concept.

It is not the province of this court to change the law as plaintiffs assert. That prerogative lies with the supreme court or the legislature. However, based upon our review of this area of the law we are compelled to note that any substantial change in the "employee-at-will" rule should first be microscopically analyzed regarding its effect on the commerce of this state. There must be protection from substantial impairment of the very legitimate interests of an employer in hiring and retaining the most qualified personnel available or the very foundation of the free enterprise system could be jeopardized.

Professor Blades clearly recognized the danger for abuse resulting from a weakening of the "employee-at-will" rule when he wrote:

> [T]here is the danger that the average jury will identify with, and therefore believe, the employee. This possibility could give rise to vexatious lawsuits by disgruntled employees fabricating plausible tales of employer coercion. If the potential for vexatious suits by discharged employees is too great, employers will be inhibited in exercising their best judgment as to which employees should or should not be retained. * * * [T]he employer's prerogative to make independent, good faith judgments about employees is important in our free enterprise system. 67 Colum.L.Rev. 1404, 1428 (1967).

Tennessee has made enormous strides in recent years in its attraction of new industry of high quality designed to increase the average per capita income of its citizens and thus, better the quality of their lives. The impact on the continuation of such influx of new businesses should be carefully considered before any substantial modification is made in the employee-at-will rule.

Without question the plaintiffs were employees-at-will. The employment application that both Mrs. Anna Whittaker and Mrs. Wanda Whittaker signed made clear that their employment could be terminated by either the employer or the employee. The application stated:

> . . . .
>
> I understand that if I am employed, it will be for a trial of three months; that if, in the judgment of the institution, I am unsuitable during this period, the employment may be terminated by the institution without notice; *and that, after this trial period, the employment may be terminated by either party at will upon two week's notice to the other. . . . (Emphasis supplied.)*

Each of the applications was signed.

The plaintiffs also claim that the employee handbook implied a specific term of employment. The handbook says:

An employee may reasonably expect uninterrupted employment year in and year out. Any employee doing his work in a satisfactory manner and working for the good of the organization has little to fear about job security.

We cannot agree that this statement entitled the plaintiffs to a specific term of employment. There are no guarantees or binding commitments contained therein. When read in conjunction with the express language of the employment application the quoted language offers no solace to plaintiff.

The trial judge was correct in granting the defendants' motion for summary judgment. Accordingly, we affirm that action and remand this cause. The costs are taxed to the plaintiffs.

AFFIRMED AND REMANDED.

TODD, P. J., and CANTRELL, J., concur.