IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2022 Session

## MANKIN MEDIA SYSTEMS, INC. v. TIMOTHY CORDER

**Appeal from the Chancery Court for Williamson County**
**No. 19CV-48300W Joseph A. Woodruff, Judge**

_____

### No. M2021-00830-COA-R3-CV

_____

Appellant appeals the trial court's order affirming the award of an arbitrator. Appellant filed suit against its former employee, the Appellee, alleging breach of contract for violation of certain provisions of the employee handbook, which also contained an arbitration clause. Because the handbook does not constitute an enforceable employment contract, the trial court erred in ordering the parties to arbitrate and in affirming the arbitrator's award. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

J. Cole Dowsley, Jr. and Sarah M. Ferraro, Nashville, Tennessee, for the appellant, Mankin Media Systems, Inc.

James W. Cobb, Abigail M. Mabry, and Taylor M. Davidson, Hendersonville, Tennessee, for the appellee, Timothy Corder.

## OPINION

### I. Background

Appellant Mankin Media, Inc. ("Mankin") is an audio, video, and lighting systems integration company based in Franklin, Tennessee. It sells, designs, installs, and supports technology systems primarily for churches and house-of-worship clients across the country. In July 2014, Mankin hired Appellee Timothy Corder as a salesperson, a position

that gave Mr. Corder access to Mankin's proprietary information, systems, and customer information.  On October 6, 2017, Mr. Corder executed an acknowledgment of receipt of an Employee Handbook, which contained the following relevant provision:

2.2 Dispute Arbitration

In return for Company's promise to do the same, your continued employment, and other benefits conferred through the employment relationship, you the employee (hereinafter "you," "your") promise to submit to binding arbitration all claims, disputes, or controversies with Mankin and its officers, directors, and employees, arising out of or relating to your employment relationship with Mankin, including disputes related to your wages and benefits, your termination, intellectual property rights, confidentiality, and any breach of this agreement, to be decided by an independent, mutually agreed upon arbitrator and any Mankin arbitration policy or agreement.

In November 2018, Mr. Corder entered employment discussions with One Diversified, LLC ("Diversified"). At that time, Diversified had no church or house-of-worship division and wished to hire Mr. Corder to start and head such division.  Mr. Corder began working for Diversified in December 2018.

Before leaving Mankin, Mr. Corder allegedly downloaded Mankin's database of client contacts.  Mr. Corder also allegedly took other Mankin files with him, including photos of Mankin's projects.  He also allegedly contacted three of Mankin's clients to tell them about his new position with Diversified and invited those clients to a trade show in Las Vegas in early 2019 on behalf of Diversified. Several of those clients eventually followed Mr. Corder to Diversified, ending their relationships with Mankin.

On April 24, 2019, Mankin filed suit against Mr. Corder, alleging breach of contract based on Mr. Corder's alleged violation of certain provisions of the Handbook; (2) breach of fiduciary duty; (3) intentional interference with business relationships; and (4) conversion.  On June 4, 2019, Mr. Corder filed a Tennessee Rule of Civil Procedure 12.02(3) motion to dismiss for improper venue on the ground that the Handbook contained an arbitration provision.  By order of August 16, 2019, the trial court denied Mr. Corder's motion to dismiss, stayed the proceedings, and ordered the parties to arbitrate.

On or about November 19, 2019, Mr. Corder filed an answer and counter-complaint. In his answer, Mr. Corder denied that the Handbook constituted a binding contract between the parties.  Rather, he asserted that his employment with Mankin was at-will pursuant to the terms of an oral agreement.  As such, in his counter-complaint, Mr. Corder alleged that Mankin had breached the parties' oral contract by withholding commissions that Mr. Corder earned prior to his departure from Mankin.

The parties proceeded to arbitration pursuant to the trial court's order. On April 16, 2021, the arbitrator entered a final award, wherein it found that the Handbook did not constitute a binding contract; as such, the arbitrator dismissed Mankin's lawsuit. Concerning Mr. Corder's counter-complaint, the arbitrator awarded him $23,032.15 in damages and $3,058.19 in interest. On or about May 14, 2021, Mankin filed a motion to vacate the arbitration award, wherein it argued that the arbitrator exceeded his authority by finding that the Handbook was not a binding contract but then proceeding to hear the case under the arbitration clause contained therein. On May 24, 2021, Mr. Corder moved for entry of an order affirming the arbitrator's award. On June 14, 2021, the trial court heard the competing motions. By order of June 28, 2021, the trial court affirmed the arbitrator's award in favor of Mr. Corder. Mankin appeals.

## II. Issues

Mankin raises the following issues as stated in its brief:

1. Whether the trial court erred in ordering the parties to arbitration by finding the dispute resolution clause in the employee handbook to be an enforceable agreement to arbitrate.
2. Whether the trial court erred in refusing to alter or amend the court's August 19, 2019 order after the arbitrator concluded that the document containing the purported arbitration provision was not a valid, enforceable contract.
3. Whether the trial court erred in confirming the arbitration award when the arbitrator exceeded his powers by issuing a final award despite concluding that the document containing the purported arbitration provision was not a valid, enforceable agreement.
4. Whether the trial court lacked subject matter jurisdiction to confirm the arbitration award when there was no valid agreement to arbitrate between the parties.

## III. Analysis

The threshold question in this appeal is whether the Handbook constitutes a valid and enforceable contract between the parties. If so, the trial court's decision to send the matter to arbitration, under section 2.2. of the Handbook, is not reversible error. However, if the Handbook does not constitute an enforceable contract, then there was no basis for arbitration, and the trial court erred in ordering arbitration in lieu of a trial on the merits. "The determination of whether a contract has been formed is a question of law." *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009) (citing *Murray v. Tenn. Farmers Assurance Co.*, No. M2008-00115-COA-R3-CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug. 12, 2008)). "Questions of law are reviewed de novo with no presumption of correctness." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)

The Tennessee Supreme Court has recently explained:

[A]n employee handbook can become a part of an employment contract. [*Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997)]; *see also* *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 688 (Tenn. Ct. App. 1999). However,

> [i]n order to constitute a contract, . . . the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. As stated by one court, in order for an employee handbook to be considered part of an employment contract, the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application.

*Rose*, 953 S.W.2d at 692 (internal quotation marks omitted) (citations omitted). Thus, there is "a high standard for establishing the existence of an employer's specific intent to be bound by the terms of an employee handbook." *Brown v. City of Niota*, 214 F.3d 718, 721 (6th Cir. 2000) (interpreting Tennessee law).

*Keller v. Casteel*, 602 S.W.3d 351, 360 (Tenn. 2020). This Court has explained the process for making a determination of whether an employee handbook constitutes and employment contract as follows:

> Whether an employee handbook or manual contains contractually enforceable terms depends upon the specific language used in the handbook or manual. *Rose*[,] 953 S.W.2d at 692. The interpretive rules used to determine what the language means are the same as the rules used to construe contracts. Accordingly, the courts will focus on the four corners of the manual or handbook and the other related employment documents and will construe these documents as written. They will also give the terms in the documents their natural and ordinary meaning, *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn.Ct.App.1988), and will construe these terms in the context of the entire agreement.

*Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 491-92 (Tenn. Ct. App. 2003) (footnotes omitted).

- 4 -

Turning to the language used in the Handbook, in the "Foreward" section, it provides: "It's also a good reminder that **the Employee Handbook is not an employment contract**, and nothing in this Employee Handbook gives an employee any right, express or implied, to continue employment" (emphasis added). The "Foreword" further states that, "[A]ll terms, conditions, policies, and procedures as stated in this document are subject to change, and nothing stated herein is guaranteed to remain a fixed term or condition of your employment." Likewise, at section 1.5, the Handbook again states, "**Nothing in this employee Handbook creates a binding employment contract** between Company and its employees or provides a guaranty of continued employment for any amount of time" (emphasis added). Rather, as the Handbook goes on to state, "At will employment status may only be altered through an express, signed, written agreement between Company and employee to that specific intended purpose." No such agreement exists in this case. This Court has explained:

> [T]he courts will decline to construe an employee handbook or manual to contain enforceable contractual obligations if the handbook or manual states that it is not intended to be a contract or that the provisions in the manual are subject to unilateral change by the employer without the employee's consent.

*Vargo*, 115 S.W.3d at 491 (footnotes omitted). As set out above, the Handbook clearly states that it is not intended to be a contract, and further states that the provisions therein are subject to unilateral change without the employee's consent. Therefore, under the foregoing authority, we conclude that the Handbook does not constitute a valid, enforceable contract between the parties.

Although the trial court ultimately concluded that the Handbook was not a valid employment contract, it nonetheless enforced the arbitration provision of the Handbook. This was error. In the absence of a valid contract requiring arbitration, there was no basis for the trial court to order the parties to arbitrate. Rather, the lawsuit was subject to adjudication by the trial court and should not have been decided by arbitration.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's order affirming the arbitrator's award. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to Appellant, Mankin Media Systems, Inc., and one-half to Appellee, Timothy Corder, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE